IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JRS PARTNERS, GP, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) NO. 3:17-cv-01258 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| CHRIS WARREN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Pending before the Court is Plaintiffs' Motion for Summary Judgment as to the only remaining Defendant, Brandy Warren (Doc. No. 169, "the Motion"),[1] to which Defendant Warren ("Defendant") has failed to respond. The Local Rules of Court provide that failure to file a timely response to a motion shall indicate that there is no opposition to the motion. Local Rule 7.01(b).

In addition, Defendant has failed to file a timely response to Plaintiffs' Statement of Undisputed Facts, as required by Local Rule 56.01(b). If a timely response is not filed within the required time periods, the asserted facts shall be deemed undisputed for purposes of summary judgment. Local Rule 56.01(f). It is well-settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and the court is not required to search the record for some piece of evidence that might stave off summary judgment. *Mullenix v. Eastman Chemical Co.*, 237 F. Supp. 3d 695, 710 (E.D. Tenn. 2017); *Flannery v. Tune Imports, Inc.,* No. 3:18-cv-00584, 2020 WL 2512825, at *4 (M.D. Tenn. May 15, 2020).

---

[1] The Motion was filed against both Defendant Brandy Warren and Defendant Chris Zelesnick, but Plaintiffs have settled with Defendant Zelesnick, and all claims against him have now been dismissed. (Doc. No. 190).

The Court may not grant Plaintiffs' Motion solely because Defendant failed to respond, however. *Mullenix*, 237 F. Supp. 3d at 710; *United States v. $155,900.00 U.S. Currency,* No. 3:20-cv-00879, 2021 WL 780515, at *1 (M.D. Tenn. Feb. 26, 2021). The Court, at a minimum, is required to examine Plaintiffs' Motion for Summary Judgment to ensure that Plaintiffs have discharged their initial burden. *Id.* (citing *Miller v. Shore Fin. Servs., Inc.,* 141 F. App'x 417, 419 (6th Cir. 2005)). The Federal Rules of Civil Procedure still require the moving party to demonstrate the absence of a disputed question of material fact and a ground that would entitle the moving party to judgment as a matter of law. *Id.;* Fed. R. Civ. P. 56(c).[2]

## BACKGROUND

As earlier decisions in this case and the corresponding criminal case indicate, Plaintiffs are victims of a Ponzi scheme[3] perpetrated by certain of the former Defendants in this case.[4] This scheme involved investments in Clean Energy Advisors ("CEA"), a company founded by Christopher Warren, who marketed CEA as providing solar farm investment opportunities in

---

[2] The Court warned Defendant that failure to keep the Court apprised of her current address and failure to respond to Plaintiffs' Motion for Summary Judgment could result in a judgment against her. (Doc. No. 190 at 2).

[3] "A Ponzi scheme is any sort of fraudulent arrangement that uses later acquired funds or products to pay preexisting investments." *Orlowski v. Bates*, 146 F. Supp. 3d 908, 924 (W.D. Tenn. 2015). Ponzi schemes are by definition fraudulent. *Id.* A Ponzi scheme is a fraudulent enterprise in which the scheme operator solicits investments, usually with the promise of high returns, and then uses funds obtained from new investors to make payments to earlier investors. *In re Rivas*, No. 08-12333, 2012 WL 1156406, at *1 (Bankr. E.D. Tenn. Apr. 6, 2012).

[4] Plaintiff's husband, Christopher Warren, was indicted on twelve counts arising from his operation of this Ponzi scheme. He pled guilty to mail fraud and securities fraud, was sentenced by this Court to 108 months of imprisonment, and was ordered to pay restitution to the victims of the Ponzi scheme. *United States v. Christopher Warren*, Case No. 3-18-cr-00153, Doc. Nos. 21 and 58. Each of the Plaintiffs herein was the beneficiary of a restitution order (of hundreds of thousands or even millions of dollars) issued in that criminal case.

exchange for tax-advantaged predictable income, when in fact CEA did no such thing and was simply a sham. *United States v. Christopher Warren*, Case No. 3-18-cr-00153, Doc. No. 21. Plaintiffs are judgment creditors of CEA. (Doc. Nos. 63 and 87).

Plaintiffs have alleged here that Defendant Brandy Warren received proceeds of that scheme in a significant cumulative sum. According to Plaintiffs, that money is subject to Tennessee's Uniform Fraudulent Transfers Act ("UFTA"), and Plaintiffs are entitled.to it. Via the Motion, Plaintiffs seek a judgment against Defendant in the amount of $3,903,830.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.

*Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## UNIFORM FRAUDULENT TRANSFERS ACT

Tennessee has adopted the UFTA, which provides remedies to creditors when insolvent debtors fraudulently transfer assets to third parties. *See* Tenn. Code Ann. § 66-3-301 *et seq*. The Act treats a transfer as fraudulent "if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that

time or the debtor became insolvent as a result of the transfer." Tenn. Code Ann. § 66-3-306(a); *Billy F. Hawk, Jr. GST Non-Exempt Marital Tr. v. Comm'r of Internal Revenue*, 924 F.3d 821, 827 (6th Cir. 2019).

The UFTA provides that: (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation. Tenn. Code Ann. § 66-3-305(a).

Under the UFTA, a "creditor" means a person who has a claim. Tenn. Code Ann. § 66-3-302(4). The Court finds that Plaintiffs are "creditors" because they lost money in the Ponzi scheme; in other words, they became tort claimants and therefore creditors from the moment they invested in CEA because, as explained below, CEA was insolvent from its inception. In addition, Plaintiffs are judgment creditors of CEA (*See* Doc. Nos. 63 and 87).[5] "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance. Tenn. Code Ann. § 66-3-302(12). As indicated below, Plaintiffs have shown that "transfers" were made to Defendant from CEA.

---

[5] Likewise, as noted above, each Plaintiff also is the recipient of a restitution order issued against Christopher Warren, but Plaintiff's claim under the UFTA is based on transfers from CEA as such, and not from Christopher Warren as an individual, so the Court herein focuses on Plaintiffs being creditors of CEA.

Moreover, because CEA was a Ponzi scheme, it was insolvent[6] from its inception. Courts hold that a Ponzi scheme is inherently insolvent because each new investor has a tort claim that cannot be repaid. *In re Schuholz*, No. 18-13108, 2019 WL 11639553, at *3 (Bankr. S.D. Ohio Oct. 18, 2019); *see also Wiand v. Lee*, 753 F.3d 1194, 1201, n.3 (11th Cir. 2014) (insolvency is necessarily present in every Ponzi scheme); *Warfield v. Byron,* 436 F.3d 551, 558 (5th Cir. 2006) (noting that "a Ponzi scheme . . . is, as a matter of law, insolvent from its inception").

Plaintiffs contend that Defendant never worked for or provided services for CEA and, therefore, she cannot show that CEA received any "reasonably equivalent value" for the transfers it made to her. Whether Defendant received a reasonably equivalent value in exchange for the payments to her is a question of fact. *In re Wilkinson*, 196 F. App'x 337, 341 (6th Cir. 2006). A court considering this question should first determine whether the debtor received *any* value in the exchange.[7] If so, the court should determine if the value received was reasonably equivalent. *Id*.; *see also In re Ellis,* Adversary Proceeding No. 1:17-ap-1051-SDR, 2018 WL 2176346, at *4 (Bankr. E.D. Tenn. May 10, 2018).

Here, as indicated, Defendant has not responded to Plaintiffs' Statement of Undisputed Material Facts and, thereby, has admitted their truthfulness. Those facts, supported by citations to the record, establish that Defendant never was employed by CEA or performed services for it. Nor was she ever employed by the other companies that were related to CEA and part of the

---

[6] A debtor (in this case, CEA) is "insolvent" if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation. Tenn. Code Ann. § 66-3-303(a). A debtor who is generally not paying such debtor's debts as they become due is presumed to be insolvent. Tenn. Code Ann. § 66-3-303(b).

[7] Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. Tenn. Code Ann. § 66-3-304(a).

Ponzi scheme. (Doc. No. 171 at ¶¶ 55-58; Doc. No. 171-5 at 3; Doc. No. 171-4 at ¶¶ 1-4). There is no evidence before the Court that Defendant received the transfers from CEA in payment of a debt or other obligation.

Plaintiffs have carried their initial burden to show that CEA did not receive "reasonably equivalent value" for the monies it transferred to Defendant, and Defendant has not carried her resulting burden to show that ultimately there is a genuine issue on this (material) question of fact. She has not pointed to any evidence tending to show that the transfers from CEA to her were made in exchange for any actual value she provided to CEA that would justify her retention of those funds.

Plaintiffs contend that CEA's transfers to Defendant were fraudulent within the meaning of the UFTA because they were made with intent to hinder, delay, or defraud creditors, including Plaintiffs. The Court agrees, because *any* transfers from a Ponzi scheme like CEA, from its inception, are deemed to be intended to hinder, delay, or defraud creditors. Establishing actual intent to hinder, delay or defraud as a matter of law can be particularly straightforward in cases involving a Ponzi scheme or a similar illegitimate enterprise, because transfers made in the course of a Ponzi operation could have been made for no purpose other than to hinder, delay or defraud creditors. *In re Canyon Sys. Corp.*, 343 B.R. 615, 636–37 (Bankr. S.D. Ohio 2006). Thus, bankruptcy and other courts nationwide have recognized that establishing the existence of a Ponzi scheme is sufficient to prove actual intent to defraud. *Id.* at 637. In sum, transfers made in furtherance of a Ponzi scheme are deemed to have been made with actual intent to hinder, delay or defraud creditors. *Id.; In re World Vision Ent., Inc.*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002) (in cases involving a Ponzi scheme, the analysis is simplified because fraudulent intent is inferred); *In re Fair Fin. Co.*, 834 F.3d 651, 670 (6th Cir. 2016) (all payments were

"fraudulent transfers" under UFTA because each transaction was undertaken in an effort to perpetuate a Ponzi scheme that inevitably collapsed and left hundreds of unsophisticated investors "holding the bag"); *Orlowski v. Bates*, No. 2:11-cv-01396-SHL-cgc, 2018 WL 7272053, at *3 (W.D. Tenn. Dec. 19, 2018) (fraudulent intent is often assumed in the case of Ponzi schemes).

As noted above, no one disputes that CEA was a Ponzi scheme. As part of his plea agreement,[8] Christopher Warren admitted that CEA was a Ponzi scheme. *United States v. Christopher Warren*, Case No. 3-18-cr-00153, Doc. No. 21. This Court specifically noted, in that criminal case, that "On December 14, 2018, Defendant Warren pled guilty to Counts One and Eight of the Indictment (Doc. No. 1) that had been filed against him on June 27, 2018 based on what was, by any measure, a brazen and catastrophic (for victims) Ponzi scheme." *Id.*, Doc. No. 182 at 2. In addition, in this case, consistent with Chris Warren's admission, the Court has characterized CEA as a fraudulent Ponzi scheme (*See, e.g.,* Doc. No. 136 at 1, 7-9, 12), and Defendant has not argued otherwise.

Under the "Ponzi scheme presumption," courts have found that investment transfers through Ponzi schemes are presumed to be made with "actual intent to hinder, delay or defraud" creditors. *Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP*, No. 09-11770, 2020 WL 2836312, at *8 (E.D. Mich. May 31, 2020). If the underlying fraud constitutes a Ponzi scheme, and if the transfer at issue serves to further that scheme, actual intent under the Bankruptcy Code or Uniform Fraudulent Transfer Act is presumed. *In re Davis*, Case No. 05-15794-L, 2016 WL

---

[8] Mr. Warren's admissions in his plea agreement are admissible, pursuant to Fed. R. Evid. 804(b)(3)(A), as statements against interest by an unavailable witness. In so stating, the Court notes that if Mr. Warren were sought by Plaintiffs to testify at or at a deposition trial in this matter, he likely would be "unavailable" because Plaintiffs would likely be unable to procure Mr. Warren's attendance or testimony due to his ongoing incarceration (and possible invocation, whether or not appropriate, of his Fifth Amendment right not to incriminate himself).

11696269, at *9 (Bankr. W.D. Tenn. June 15, 2016). The Ponzi scheme presumption may be overcome if the defendant is able to show, for example, that the transfers to it were not made in furtherance of the Ponzi scheme. *Id.*

Plaintiffs have sufficiently shown that the Ponzi scheme presumption of intent to hinder, delay or defraud should apply in this case. Defendant has provided no evidence, and asserted no facts, to overcome this presumption, as she has failed to respond to the Motion at all.

Finally, Plaintiffs have carried their burden to show that they are entitled to avoidance of the subject transfers from CEA to Defendant. In an action under Tennessee's UFTA, a creditor may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Tenn. Code Ann. § 66-3-308(a)(1).

Plaintiffs have shown that payments were made from CEA to Brandy Warren during 2014 in the amount of at least $738,000.00; during 2015 in the amount of at least $995,000.00; during 2016 in the amount of at least $1,798,830.37; and during 2017 in the amount of at least $370,000.00. (Doc. No. 171 at ¶¶ 68-71 and citations therein).[9] Thus, the total amounts paid from CEA to Brandy Warren was at least $3,901,830.37. (*Id.* at ¶ 72). In addition, Plaintiffs' expert, Ms. Scouten,[10] who analyzed the CEA accounts, stated that monies transferred from CEA to Brandy Warren totaled $3,903,830. (Doc. No. 171-1 at 20).

Defendant has not shown otherwise or contested these amounts. Neither has she provided any defenses to the avoidance of these transfers. Accordingly, Plaintiffs' Motion will be granted, and these transfers will be avoided. Tenn. Code Ann. § 66-3-308(a)(1) (In an action for relief

---

[9] Christopher Warren acknowledged that he gifted illegal proceeds of the Ponzi scheme to his wife, Brandy Warren. *United States v. Christopher Warren*, Case No. 3-18-cr-00153, Doc. No. 21 at ¶ 32.

[10] Defendant has provided no contradictory evidence and no competing expert testimony.

against a transfer under UFTA, a creditor may obtain avoidance of the transfer to the extent necessary to satisfy the creditor's claim).

Plaintiffs have obtained an aggregate judgment against CEA far exceeding the amount of the transfers to Defendant (Doc. Nos. 63 and 87), and there is no evidence that any of that judgment against CEA has been paid. Under the UFTA, if a creditor has obtained a judgment on a claim against a debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds. Tenn. Code Ann. § 66-3-308(b). The Court finds that Plaintiffs are entitled to judgment against Brandy Warren[11] for the total amount of fraudulent transfers made to her from CEA.

## CONCLUSION

For the reasons explained herein, Plaintiffs' Motion for Summary Judgment against Defendant Brandy Warren will be granted via a separate Order and Judgment. Ms. Warren heretofore being the only remaining Defendant, the Clerk will be directed to close the file.[12]

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[11] Tenn. Code Ann. § 66-3-309 provides that to the extent a transfer is voidable in an action by a creditor under Section 66-3-308, the creditor may recover judgment for the value of the asset transferred and judgment may be entered against the first transferee of the asset—here, Defendant Warren.

[12] Presumably, Plaintiffs should not be entitled to a double or triple recovery on their losses by collecting not only on the judgment hereby ordered, but also on their restitution orders and on their judgment. But such concerns are outside the scope of the matter currently before the Court.